

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID M. BIGGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:03-cv-00225 |
| | ) |
| LITTLEFUSE, INC., | ) Magistrate Judge Arlander Keys |
| a corporation, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendant's Motion for Summary
Judgment. Fed. R. Civ. P. 56. Plaintiff David Biggs sued his
former employer, Littlefuse, Inc. ("Littlefuse"), claiming that
it terminated him in violation of the Americans with Disabilities
Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (West 2006), and the
Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*
(West 2006); and in retaliation for complaining to the
Occupational Safety and Health Administration ("OSHA") and for
seeking the protections of the ADA. For the reasons set forth
below, Defendant's Motion is Granted.

### Background Facts

Littlefuse is an Illinois corporation that manufactures
surge protection devices. Mr. Biggs began working for Littlefuse
on November 5, 1979, as an apprentice. Mr. Biggs was promoted
within six months of starting with the company, and was trained

1

for and held a number of positions through the years, including lead tool engineer, supervisor, and manager. His supervisors generally found him to be a reliable and competent employee. However, on August 31, 2000, Mr. Biggs had a disagreement with a new supervisor and quit[1].

John Adamczyk, a Manager of Manufacturing and Engineering Services at Littlefuse, was instrumental in having Mr. Biggs rehired in 2001 as an hourly, non-exempt Fabrication Support Technician. In his new position, Mr. Biggs was responsible for developing a fuse-manufacturing process that utilized a new nylon resin material, which was less expensive than the material previously in use. Although the nylon resin was less costly, this new process was frequently hampered by clogs that developed in the fuse machines. To correct the problem, Mr. Biggs burned the residue clogs off of the machine nozzles with a torch. This enabled Mr. Biggs to remove the clog and maintain optimal production.

Unfortunately, Mr. Biggs, a lifelong smoker who already suffered from chronic bronchitis, became sensitized to the new chemical compounds released during the clog-burning process. As it was eventually determined, the clog-burning process created

---

[1]Notably, during this time, Littlefuse granted Mr. Biggs FMLA leave for a foot injury, chest pains, and a bleeding ulcer, and restored him to his position based on paperwork that Plaintiff signed, but apparently did not understand.

fumes that irritated Mr. Biggs' lungs. Because Mr. Biggs needed
both hands when burning the residue clogs, he was unable to put a
rag over his mouth to filter the fumes.

Mr. sensitivity to the clog-burning process began impacting
his job performance. On January 7, 2002, Mr. Biggs had
difficulty breathing while working with the nylon resins. He
developed shortness of breath and fatigued suddenly, and was
unable to complete his shift. Through the month of January and
into February, Mr. Biggs' condition grew progressively worse. He
frequently left his work area to rest and to ease his labored
breathing, and he began to miss work on a regular basis.

Mr. Adamczyk attempted to cover for Mr. Biggs' absences, but
lacked the authority to excuse him. Finally, in February of
2002, production manager Carlos Storz brought Mr. Biggs' repeated
absences to the attention of Quentin Marvin, a human resources
representative. At Mr. Marvin's instruction, Mr. Biggs went to
see Cathy Junor, the company nurse; he reported having trouble
breathing and expressed his concern over his frequent absences.
Ms. Junor purportedly responded "What do you want me to do?," and
suggested that if any other employee had missed so much work,
they would have been fired.

On February 20, 2002, Mr. Adamczyk accompanied Mr. Biggs to
Ms. Junor's office for a meeting with Ms. Junor and Mr. Marvin.
Ms. Junor and Mr. Marvin explained the provisions of the Family

3

Medical Leave Act to Mr. Biggs, and assisted him in filling out his "Request for Leave of Absence" form. Both Ms. Junor and Mr. Marvin stressed the need for medical documentation from Mr. Biggs.

On March 2, 2002, Plaintiff was hospitalized for asthma. When Mr. Biggs attempted to return to work, Mr. Marvin and Ms. Junor were concerned by his appearance, confusion, and inability to ask a normal question. On March 12, 2002, Mr. Marvin and Ms. Junor gave Mr. Biggs the choice of taking a medical leave or continuing to work while meeting normal expectations. Mr. Biggs elected to continue working, but he then missed work on March 14th and 15th. On March 18, 2002, Mr. Biggs returned to work without a medical release.

On March 21, 2002, Mr. Biggs submitted doctor notes dated February 18, and March 2nd and 12th. On April 9, 2002, Ms. Junor received Mr. Biggs' short term disability ("STD") form, in which his doctor stated that it was "unknown" whether Mr. Biggs' condition was work related[2]. Mr. Biggs called Ms. Junor on April

---

[2] Littlefuse is a self-insured company. As such, Littlefuse had no incentive to secure short term disability benefits, as opposed to worker's compensation benefits for Mr. Biggs, or vice versa. According to Roseanne Boyle-Foehring, the claims supervisor for Ft. Dearborn, which administered the Littlefuse STD plan, the normal procedure for processing STD claims that may be work related is to require the employee to first submit a workers compensation claim. Accordingly, Ms. Junor submitted Mr. Biggs' short term disability application, anticipating that it would be denied, because of the potential that Mr. Biggs' condition was work related. On April 18, 2002, Ms. Junor

4

5, 2002 and told her that he had not been released to return to work, and that he hoped to return the following week.

On April 12, 2002, Mr. Biggs told Ms. Junor that he could return to work with certain restrictions, specifically stating that he could no longer work with plastics. Ms. Junor claims that Mr. Biggs hedged when she asked him whether his doctor told him his condition was work related, and claims that Mr. Biggs admitted that he was not having any difficulty breathing since he had been out of the workplace. Ms. Junor explained to Mr. Biggs that Littlefuse would have to evaluate what positions, if any, were available to him under these circumstances.

On April 18, 2002, Mr. Biggs submitted recent notes from his physicians, Dr. Krantz and Dr. Khurana, explaining that Mr. Biggs could return to work, so long as he was restricted from exposure to heated plastics, known respiratory sensitizers, and respiratory irritants, at least until their medical evaluations were complete. While Defendant claims that it found the notes and the restrictions to be vague, it did little to clarify the ambiguity. Nevertheless, Mr. Biggs, Ms. Junor, and Mr. Marvin all understood the physicians' notes to preclude Mr. Biggs' from

---

submitted a worker's compensation claim, which would be denied because of the lack of solid evidence that Mr. Biggs' condition was, in fact, work related. Mr. Biggs' worker's compensation claim was denied on May 24, and Ms. Junor resubmitted the STD claim, which was ultimately awarded upon the condition that Mr. Biggs execute an agreement permitting the recovery of the STD if he later filed a successful worker's compensation claim.

5

returning to his former position. Ms. Junor and Mr. Marvin claim that they attempted to find another suitable position for Mr. Biggs, but they were unable to do so, at least in part, because Littlefuse was laying off employees at that time.

That same day, Ms. Junor emailed Messrs. Giagnorio, Audino, Marvin and Sammons, as well as Ms. Donna Klicka, all high level managers with Littlefuse, that she had received the two physicians' notes, and that Mr. Biggs informed her that he was "having no problems what so ever" since he had been off work. Ms. Junor also forwarded Mr. Biggs' desire to be reassigned to a new position upon his return from leave. Ms. Junor recommended that Mr. Biggs not be returned to the Littlefuse environment, based upon the physicians' vague restrictions and the ongoing medical evaluation.

The tension between Mr. Biggs and Littlefuse's representatives was growing. Mr. Biggs was concerned about his extended lack of a paycheck, and he had a difficult time understanding the relationship between workers compensation and STD eligibility. Littlefuse's representatives found Mr. Biggs to be agitated and hostile. On April 22, 2002 Ms. Junor told Ms. Misty Fridono, Littlefuse's worker's compensation claim adjuster, that she was suspicious of Mr. Biggs' claim, because he was a smoker with ashtma whose supervisor had covered for him when he missed work. Ms. Junor requested an independent medical

examination with a pulmonary specialist and to have a registered nurse address the psychological issues she believed Mr. Biggs had.

On May 1, 2002 Messrs. Audino and Marvin had a conference call with Mr. Biggs and confirmed their understanding that Mr. Biggs had an undiagnosed respiratory condition, and that he could not work in the production environment. Mr. Biggs reiterated that he could not return to his former position. The group explored whether there was an open position for which Mr. Biggs was qualified; Mr. Biggs desired an office position in sales or finance, but Defendants believed him to be educationally and occupationally unqualified. Mr. Marvin authorized the payment of four weeks vacation to Mr. Biggs, pending the approval of his STD claim.

There is conflicting evidence as to whether Mr. Biggs was terminated during the May 1st meeting; Mr. Biggs initially testified that he was not told that he was fired, but that he was told that he could not be accommodated in his job of expertise. Mr. Biggs later testified that he believes he was effectively fired during the May 1st conference. Littlefuse submitted to Mr. Biggs a summary of the May 1st meeting, and there is no mention that Mr. Biggs had been terminated at that time.

By May of 2002, Mr. Biggs began working at other molding companies utilizing the same nylon material that had given rise to his breathing difficulties at Littlefuse. Mr. Biggs claims that superior ventilation enabled him to do this work without compromising his health. On May 10, 2002, Mr. Biggs sent a letter to OSHA asking it to investigate the ventilation at Littlefuse's facilities and to review its Material Safety Data Sheets ("MSDS"). Shortly thereafter, OSHA visited Littlefuse's facilities for an inspection. Although Mr. Biggs never told Littlefuse that he had contacted OSHA, he did reveal this information to Misty Fridono, Littlefuse's worker's compensation administrator. On May 28, 2002, Ms. Fridono told Ms. Junor that Mr. Biggs claimed to have contacted OSHA. Less than one-half hour after Ms. Fridono passed this information along to Ms. Junor, Ms. Junor instructed Mary Crawford, Littlefuse's short term disability adjuster, to pay Mr. Biggs' full short term disability benefit "because he will not be returning."

On July 8, 2002, Mr. Biggs contacted Littlefuse in an effort to protect his right to receive COBRA, and requested formal documentation of his separation. Mr. Paul Giagnorio signed a termination record indicating that Mr. Biggs had been terminated for exceeding his FMLA leave, retroactive to June 10, 2002.

## Discussion

### A. Summary Judgment Standards

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive summary judgment, the non-moving party must offer more than "mere conclusory" allegations. *Nowak v. St. Rita High School*, 142 F.3d 999, 1002 (7th Cir. 1998). *See also Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The non-moving party must offer more than a "metaphysical doubt as to the material facts.") The non-moving party will lose on summary judgment if he cannot present sufficient evidence to support each element of his case for which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, the Court will disregard all facts not properly supported by the record. *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

9

Under Local Rule 56.1(b), a party opposing a motion for summary judgment shall file a concise response to the movant's statement, which should include "a response to each numbered paragraph in the moving party's statement," including "specific references to the affidavits, parts of the record, and other supporting materials relied upon." (L. R. 56.1(b)(3)(A)). Failure to comply with the Local Rule may result in the paragraphs with inadequate responses being deemed admitted. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 689 (7th Cir. 2000). The Seventh Circuit has "repeatedly held that a district court is entitled to expect strict compliance with [Local] Rule 56.1" *Ammons v. Aramark Unif. Servs. Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (noting that substantial compliance does not constitute strict compliance.)

In this case, Plaintiff admits that Defendant's 191-Paragraph Statement of Material Facts is "for the most part, fairly accurate." "Rather than challenge each paragraph" from Defendant's Statement of Material Facts, Plaintiff's counsel "elected to prepare a similar Statement of Uncontested Facts Pursuant to Local Rule 56.1(b)(1)(B)," to "fill in the blanks for the court and provide the rest of the story." In choosing to do so, Plaintiff has failed to comply with Local Rule 56.1, and Defendant's Statement of Uncontested Facts are deemed admitted.

## B. Littlefuse Did Not Violate Mr. Biggs' FMLA Rights

Mr. Biggs claims that Defendant violated the Family Medical Leave Act ("FMLA") when it refused to rehire him upon the expiration of his leave.

The FMLA "establishes two categories of broad protections for employees." *King v. Preferred Tech. Growth,* 166 F.3d 887, 891 (7th Cir. 1999). First, the FMLA entitles employees of a covered employer to unpaid leave for up to 12 work weeks in a twelve month period for a "serious health condition". 29 U.S.C. § 2612(a)(1) (West 2006). Following FMLA leave, the employee is entitled to be reinstated to his former position, or a substantially similar position. 29 U.S. C § 2614(a) (West 2006). The FMLA prohibits employers from interfering with, restraining, or denying the exercise of these rights[3]. 29 U.S.C. § 2615(a)(1) (West 2001).

At the expiration of Mr. Biggs' FMLA leave[4], Littlefuse refused to reinstate Mr. Biggs to his former position, because he was admittedly unable to return to that position, and Littlefuse refused to place him in a substantially similar position,

_____

[3] The FMLA also requires employers to inform employees of their rights and obligations under the Act. 29 C.F.R. Sec. 825.301(a)-( c). Plaintiff's Response Brief does argue that Littlefuse interfered with his rights under the FMLA in this manner.

[4] Technically, Mr. Biggs received more than 12 weeks of FMLA leave.

11

because, purportedly, none were available. Nevertheless, the Court concludes that Littlefuse has not violated Mr. Biggs' FMLA rights. The undisputed evidence demonstrates that, once placed on medical leave, Mr. Biggs never wavered from his claim that he was physically unable to return to his prior position. Mr. Biggs' physicians agreed that, given his asthma, bronchitis, and history as a smoker, Mr. Biggs could not tolerate his previous work environment. And because Mr. Biggs' illness prevented him from resuming his prior work, Littlefuse was free to terminate his employment. *Rinehimer v. Cemcolift, Inc.* 292 F.3d 375 (3rd Cir. 2002) (the FMLA does not require an employer to find a new, comparable position for an employee who is not capable of performing his previous work.)

To succeed on his FMLA claim, Mr. Biggs is required to show not only that Littlefuse refused to return him to his prior position, but also that he was capable of performing the essential functions of his previous job. *Id.* at 382-83 (3d Cir. 2002)("the FMLA does not require 'an employer to provide a reasonable accommodation to an employee to facilitate his return to the same or equivalent position at the completion of his medical leave.'"); *Tardie v. Rehabilitation Hosp.*, 168 F.3d 538, 543 (1st Cir. 1999). Specifically, the FMLA's regulations provide that "if the employee is unable to perform an essential function of the position because of a physical or medical

12

condition, including the continuation of a serious health condition, the employee has no right to restoration to another position." 29 C.F.R. sec. 825.2149(b); *see also, Harrell v. U.S. Postal Service,* 445 F.3d 913, 919 n. 2 (7th Cir. 2006).

The Court acknowledges that, when considering the evidence in a light most favorable to Plaintiff, it is unclear when Mr. Biggs was actually terminated: Mr. Biggs testified both that he was not fired on May 1st, and that he was, in fact, terminated on May 1st; Littlefuse's documentation refutes the assertion that it fired Mr. Biggs on May 1st, but Ms. Junor did inform Littlefuse's STD administrator on May 28th that Mr. Biggs would not be returning to work; and finally, on July 8th, at Mr. Biggs' request, Mr. Marvin recorded Plaintiff's separation as a quit retroactive to June 10, 2002, to ensure that Mr. Biggs would have COBRA insurance coverage[5].

The dispute over precisely when Mr. Biggs was terminated is irrelevant, however, because the uncontroverted evidence demonstrates that, even as early as May 1st, Mr. Biggs would not be able to return to his previous position at the expiration of his FMLA leave. *Cehrs v. Northeast Ohio Alzheimer's Research Center,* 155 F.3d 775, 785 (6th Cir. 1998) (finding no FMLA violation, because regardless of which termination date was

---

[5]     These events were confirmed in a letter dated July 18, 2002.

13

correct, the plaintiff was not going to be able to return to work upon expiration of the leave period.) When it is clear that an ill employee will not be able to resume his previous duties upon the expiration of the leave period, courts generally do not hold employers to technical compliance with the FMLA's leave provisions:

> Numerous federal courts have held that an employee's rights under the FMLA were not violated when, although the employee may have been terminated from unpaid leave before the end of the FMLA period, there was no dispute that the employee would not have been able to return or would not have returned to work at the end of the leave period.

*Mendoza v. Micro Electronics, Inc.,* 2005 WL 331585, at * 4 (N.D. Ill. Feb. 8, 2005) (finding that a genuine issue of material fact as to whether the employee could have resumed work in a timely manner precluded summary judgment.) *See also, Reynolds v. Phillips & Temro Industries, Inc.,* 195 F.3d 411 (8th Cir. 1999) (no FMLA violation where employer terminated employee 10 days after a debilitating car crash, where the evidence was clear that the employee would not be able to return to his position lifting loads up to 100 pounds each day at the expiration of the leave period.)

In this case, there is simply no evidence to suggest that Mr. Biggs would have been able to return to his previous position at Littlefuse on June 10, 2002 . Mr. Biggs repeatedly informed Littlefuse that he could not work on the floor; at no time did Mr. Biggs represent otherwise. To the contrary, as late as July

of 2002 – weeks after the expiration of his leave– Mr. Biggs conceded that he could not resume his former duties and requested documentation of a formal separation from Littlefuse. Because there is no dispute that Mr. Biggs could not have returned to work upon the expiration of his FMLA leave, the controversy over his termination date does not preclude summary judgment for Littlefuse on Mr. Biggs' FMLA claim. Therefore, the Court grants Defendant's Motion for Summary Judgment for Mr. Biggs' FMLA claim.

## C.  Littlefuse Did Not Violate Mr. Biggs' ADA Rights

In order to establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that: (1) he was "disabled" for purposes of the ADA; (2) he was "otherwise qualified to perform the essential functions of the job with or without reasonable accommodation"; and (3) the employer took an adverse employment action against him because of his disability, or failed to make a reasonable accommodation[6] .  If the employee establishes his prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *St. Mary's Honor Center v.*

---

[6] Implicit in this analysis is that the employer was aware of the disability at the time of the adverse employment action. *See Foster v. Arthur Andersen, LLP,* 168 F.3d 1029, 1032 (7th Cir. 1999

*Hicks*, 509 U.S. 502, 506 (1993)[7]. To survive summary judgment, the employee must then demonstrate that the employer's proffered reason is pretextual. *Coco v. Elmwood Care, Inc.,* 128 F.3d 1177, 1178-79 (7th Cir. 1997); *see also, Reeves vs. Sanderson Plumbing Products, Inc.,* 120 S. Ct. 2097, 2102 (2000) (a plaintiff's prima facie case, combined with evidence that the employer's asserted justification is false is sufficient to stave off summary judgment.)

Defendant claims that Mr. Biggs cannot establish his prima facie case, because, even though he is ill, he is not disabled under the ADA. Defendant's point is well taken; the ADA does not protect all medically-afflicted persons. Rather, Congress intended to extend the ADA's protections only to employees who are actually disabled, as defined by the Act. *Christian v. St. Anthony Medical Center,* 117 F.3d 1051, 1053 (7th Cir. 1997).

---

[7] Courts employ the McDonnell Douglas framework to race, gender, age, and disability discrimination claims. *Weigel v. Target Stores,* 122 F.3d 461, 465 (7th Cir. 1997) (noting, however, that the application of McDonnell-Douglas to the ADA tends to be more involved.) "Although the [McDonnell-Douglas burden shifting] analysis derives from Title VII cases, [the Seventh Circuit] saw no reason in *DeLuca* not to apply it to ADA claims, 53 F.3d at 797), and our sister circuits have likewise found the analysis appropriate. *Leffel v. Valley Financial Servs.,* 113 F.3d 787, 792 (7th Cir. 1997). Although this analysis is not appropriate when a plaintiff claims that his employer failed to reasonably accommodate his disability, *Id.* At 792-93, the distinction is irrelevant in the instant case, because Plaintiff has failed to even establish that he is disabled under the ADA.

16

Consequently, an employer does not violate the ADA by discriminating against an employee simply because he is ill -- even permanently ill -- but not "disabled." *Id.*

To be considered disabled under the ADA, Mr. Biggs must demonstrate that he: a) has a physical or mental impairment that substantially limits one or more major life activities[8]; b) has a record of such an impairment; or c) is regarded as having a disability. It is not the Court's role to determine whether Plaintiff was, in fact, "disabled" under the ADA; rather, the Court only needs to decide whether a rational jury, viewing the evidence in the light most favorable to Plaintiff, could reach such a conclusion. *EEOC v. Sears, Roebuck and Co.,* 233 F.3d 432, 438 (7th Cir. 2000).

Mr. Biggs argues that he is disabled, because he suffers from a medical condition that substantially limits his ability to breathe. While courts consider breathing to be a major life activity, 29 C.F.R.1630.2(I), Mr. Biggs has not presented sufficient evidence to demonstrate that his breathing was substantially limited. *See Bragdon v. Abbot,* 524 U.S.624, 631 (1998) (instructing lower courts to assess whether the plaintiff has a physical or mental impairment, whether the impairment

---

[8] Major life activities are defined as "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. 1630.2(i) (West 2006)

17

affects a major life activity, and whether the impairment substantially limits that major life activity.)

"To be 'substantially limited' means that the individual is unable to perform, or is significantly restricted as to the condition, manner or duration under which the individual can perform a major life activity as compared to an average person in the general population.'" *Kroca v. City of Chicago,* 203 F.3d 507, 512 (7th Cir. 2000) (citations omitted). In assessing whether an impairment is substantially limiting, the Court must take into account any corrective measures undertaken by the plaintiff to mitigate the impairment, including medications. *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 482 (1990)

The evidence shows that, when Mr. Briggs avoids certain conditions, specifically, the production environment at Littlefuse, his asthma attacks and bronchitis do not substantially limit his ability to breath. *See, e.g., Marine v. H.J. Mohr & Sons, Co.,* 2005 WL 2293673 (N.D. Ill. Sept. 19, 2005) (finding that the plaintiff was not disabled under the ADA even though his asthma required frequent hospitalizations); *see also Davis v. AM. Drug Stores, Inc.,* 2003 WL 21149063 (N.D. Ill. May 19 2003). Mr. Biggs admitted that he felt fine when he was away from work, and he has conceded that he was able to work for different molding companies using the same nylon substance without difficulty breathing because, he claims, of superior

18

ventilation.  At best, the evidence demonstrates that, from January through March of 2003, Mr. Biggs experienced extreme difficulty breathing while performing a specific job at Littlefuse.  Caselaw is clear that the inability to perform one specific job is not sufficient to support a finding of disability.  *Skorup v. Modern Door. Corp.,* 153 F.3d 512, 514-15 (7ᵗʰ Cir. 1998).  Similarly, an intermittent flare-up of a condition does not qualify as a disability under the ADA.  *Moore v. J.B. Hunt Transport. Inc.,* 221 F.3d 944, 952 (7ᵗʰ Cir. 2000).

Mr. Biggs does not argue that anyone at Littlefuse perceived him to be disabled, or that he had a record of disability.  A review of the evidence in this case suggests that such arguments, if made, would have been futile.  Because the evidence does not raise a genuine issue as to whether Mr. Biggs was disabled, Mr. Biggs' contentions that Littlefuse fell down on its obligations to contact his physicians to fully explore the parameters of his condition, or to find a suitable accommodation for him at work are irrelevant.  *See Christian,* 117 F.3d at 1053 (an employer's duties under the ADA are triggered only if the employee is "disabled," not ill); *Skorup*, 153 F.3d at 514 (no ADA liability if the employer discriminates against an employee for being ill, even permanently ill.)  Because the evidence permits only one inference - that Mr. Biggs was not disabled within the meaning of

19

the ADA -- the Court grants Littlefuse's Motion for Summary
Judgment on Mr. Biggs' ADA claim.

## D. The Court Declines to Exercise Jurisdiction over Plaintiff's Retaliation Claim.

Mr. Biggs asserts that Littlefuse violated Illinois law,
because it terminated him in retaliation for contacting OSHA.
While Mr. Biggs' Amended Complaint also alleges that Littlefuse
violated Illinois law by terminating him in retaliation for
seeking the protections of the ADA, he has abandoned this claim
in his Response brief, relying soley on contact with OSHA to
support his  state-law retaliation claim.

Pursuant to 28 U.S.C. 1367 (c)(3), this Court may refuse to
exercise its supplemental jurisdiction over a state law claim,
where all federal-based claims have been dismissed.  "The general
rule is that, when all federal claims are dismissed before trial,
the district court should relinquish jurisdiction over pendent
state-law claims rather than resolving them on the merits."
Kennedy v. Shoenberg, Fisher & Newman, Ltd., 140 F.3d 716, 727
(7th Cir. 1998).  Having disposed of the federal claims, the
Court declines to exercise jurisdiction over Plaintiff's state-
law retaliation claim.  This Court will "respect the state's
interest in applying its own law, along with the state court's

20

greater expertise in applying state law.[9]" *Huffman v. Hains,* 865
F.2d 920, 923 (7th Cir. 1989.)

## Conclusion

For the reasons stated above, the Court GRANTS Defendant's
Motion for Summary Judgment. Plaintiff has failed to produce
sufficient evidence to raise an inference that he was disabled
within the meaning of the ADA, or that Defendants violated the
FMLA. Having disposed of Mr. Biggs' federal claims prior to
trial, the Court declines to exercise its supplemental
jurisdiction over Mr. Biggg's state-law retaliatory discharge
claim.

Dated: December 8, 2006    ENTER:

*Arlander Keys*

ARLANDER KEYS
United States Magistrate Judge

---

[9] In the instant case, Illinois retaliatory discharge law
is somewhat unique in that Illinois courts do not recognize the
application of the *McDonnel-Douglas* burden shifting approach,
*Clemons v. Mechanical Devices Co.,* 704 N.E.2d 403, 406 (Ill. 1998)
to Illinois' very narrow exception to the general rule that an
at- will employee may be terminated without cause, at any time.
*See Hartlein v. Illinois Power Co.,* 601 N.E.2d 720, 728 (Ill.
1992). Notably, there is some dispute as to whether federal
courts should, nevertheless, apply *McDonnell Douglas* to state-law
retaliation claims brought in federal court. *See Borcky v. Maytag
Corp.,* 248 F.3d 691, 696 n. 5 (7th Cir. 2001).

21